UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM JAMES,

        Petitioner,        Case No. 1:08-cv-69

v.        Honorable Paul L. Maloney

BLAINE C. LAFLER,

        Respondent.
_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner is serving a term of 10 to 20 years, imposed by the Kent County Circuit Court on December 13, 2004, after Petitioner pleaded guilty to armed robbery, MICH. COMP. LAWS § 750.529. In his *pro se* petition, Petitioner raises two grounds for relief, as follows:

    I.    THE TRIAL COURT ERRED IN NOT SENTENCING PETITIONER UNDER A PREVIOUS COOPERATION PLEA AGREEMENT WITH THE PROSECUTOR, WHERE THE PETITIONER COMPLIED WITH ALL THE CONDITIONS OF THAT AGREEMENT.

    II.    PETITIONER IS ENTITLED TO RESENTENCING WHERE THE SENTENCING GUIDELINES WERE SCORED INACCURATELY, AND PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL FAILED TO MAKE A CHALLENGE CONCERNING THE SCORING OF THE SAME.

(Pet., 6-7, docket #1.) Respondent has filed an answer to the petition (docket #7) stating that the grounds should be denied because they are noncognizable state law claims or have no merit. Upon

review and applying the AEDPA standards, I find that both grounds lack merit. Accordingly, I recommend that the petition be denied.

## Procedural History

### A. Trial Court Proceedings

The state prosecution arose from the brutal assault and robbery of Zachary Campbell at knifepoint on March 15, 2004. Petitioner was charged with one count of armed robbery, and following a preliminary examination on March 25, 2004, he was bound over on the charge. A supplemental information was filed charging petitioner as a habitual offender, fourth offense.

According to the testimony at the preliminary examination, at about 12:30 a.m. on March 15, 2004, Zachary Campbell was walking home after purchasing a soft drink at a gas station. (Preliminary Examination Transcript (P. Tr.), 4, docket #13.) Campbell was grabbed, thrown onto the ground, and kicked and punched by two black men. (P. Tr., 4-5.) One of the men showed Campbell a knife, seized Campbell's wallet and keys and demanded his ATM pass code. (P. Tr. 5-6.) As a result of the beating, Campbell needed stitches in his eye and surgery on his jaw, which was broken in two places. (P. Tr., 7.)

On the day set for trial, Petitioner pleaded guilty to armed robbery and agreed to cooperate with Grand Rapids Police Detective John Bylsma in the investigation of other matters in exchange for the prosecutor's agreement to dismiss the fourth habitual offender supplement. In addition, as repeated by defense counsel, the court and the prosecutor, Petitioner also was promised that, if the detective deemed Petitioner's assistance to be very significant, the prosecutor would make

a sentence recommendation. (P. Tr., 7-8, 11, 12, 19-20.) The prosecutor stated the agreement as follows and both Petitioner and his attorney expressed their agreement with the stated terms:

> THE COURT. Listen carefully then. . . . Ms. Brinkman, what's the plea agreement?
>
> MS. BRINKMAN: Your Honor, that upon successful plea and sentence to Count I, we're dismissing a habitual felon charge only because of his willingness to work with John Bylsma. And, that is a significant reduction in his sentence already.
>
> If John Bylsma then tells us that the information provided was very significant, we are willing to do a sentence recommendation in addition to that. But, that is contingent upon John Bylsma and his cooperation with John Bylsma.
>
> As I indicated, we are expecting cooperation as it is, because we are dropping the Supps. That's the extent of the deal.
>
> THE COURT: Ms. Foster, is that it?
>
> MS. FOSTER: That's it.
>
> THE COURT: Mr. James, is that it?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Anybody promise you more?
>
> THE DEFENDANT: No.

(Plea Tr., 19-20, docket #14.) Petitioner subsequently replied, "Yes," when the court asked, "Did you take an ATM card and maybe a few other things at knife point from a kid you encountered on the street there on Wealthy?" (Plea Tr., 21.)

On December 13, 2004, Petitioner appeared at sentencing. (Sentencing Transcript, (S. Tr.), 3, docket #15.) During allocution, Petitioner suggested that he did nothing wrong, but instead merely attempted to break up a fight. (S. Tr., 4-5.) The court rejected the claim as inconsistent with Petitioner's guilty plea. The court sentenced Petitioner to serve a term of

imprisonment of 10 to 20 years. (S. Tr., 5.) In setting sentence, the court specifically referenced the extensiveness of Petitioner's prior record and the severity of the offense. (*Id.*)

### B. Direct Appeal

Within 42 days of sentencing, Petitioner requested appointed counsel on appeal. The sentencing court denied the request on January 6, 2005, in accordance with then-existing law, MICH. COMP. LAWS § 770.3a. Petitioner filed a *pro per* application for leave to appeal to the Michigan Court of Appeals. On June 23, 2005, the United States Supreme Court decided *Halbert v. Michigan*, 545 U.S. 605 (2005), which held that the denial of appellate counsel to indigent defendants under MICH. COMP. LAWS § 770.3a violated due process and equal protection. On July 5, 2005, Petitioner renewed his request for appellate counsel, which was denied for lack of sufficient information about Petitioner's indigent status. Petitioner filed a third request for appointed counsel on July 29, 2005. On September 29, 2005, the trial court issued a lengthy opinion denying counsel, concluding that Petitioner waived his right to appellate counsel at the plea hearing. On January 20, 2006, the Michigan Court of Appeals granted Petitioner's application for leave to appeal. On March 6, 2006, the trial court finally granted appointed counsel. (Cir. Ct. Docket Sheet, docket #12.) Before counsel filed a brief on appeal, however, the court of appeals, in a published decision, reversed the trial court's determination that Petitioner had waived counsel and remanded the case for further proceedings. *People v. James*, 725 N.W.2d 71 (Mich. Ct. App. 2006).

Thereafter, appellate counsel moved for resentencing. On October 13, 2006, the trial court heard the motion, which initially raised issues involving the calculation of the sentencing guidelines, as well as a challenge to the amount of restitution. (Resentencing Tr., 3-5, docket #16.) At the hearing, the circuit court noted that at least one of the prior record variables had been scored

incorrectly. However, the court advised Petitioner that, based on other information before the court, rescoring of the guidelines was likely to result in an increase to the sentencing range. (*Id.*) In the face of the possibility that, if he prevailed on his motion, the guidelines score and the resulting sentence might increase, Petitioner dropped his challenge to the scoring of the guidelines. (*Id.* at 5-6.) The remainder of the proceeding addressed only the restitution issue.

Petitioner, through counsel, subsequently filed an application for leave to appeal to the Michigan Court of Appeals. His brief, which was filed by counsel on December 7, 2006, raised only the issue that the restitution order deprived him of property without due process. (*See* Def.-Appellant's Br. on Appeal, docket #20.) On March 6, 2007, Petitioner filed a motion to file a *pro per* supplemental brief in which he raised his first ground on habeas review: he was not sentenced in accordance with his plea agreement, in violation of due process. In an unpublished order issued March 28, 2007, the court of appeals denied the motion to file a supplemental brief and denied the application for leave to appeal for lack of merit in the grounds presented. (*See* 3/28/07 Mich. Ct. App. Ord. (MCOA Ord.), docket #20.)

Petitioner filed a pro per application for leave to appeal to the Michigan Supreme Court. Petitioner raised two issues: (1) that restitution was imposed in violation of due process; and (2) that Prior Record Variable (PRV) 1 and PRV 7 were mis-scored, in violation of his right to due process. Petitioner raised ineffective assistance of counsel as grounds excusing the failure to object to the sentence scoring at the time of the sentence. By order entered July 30, 2007, the Michigan Supreme Court denied his application for leave to appeal because it was not persuaded that the questions presented should be reviewed. (*See* Mich. Ord., docket #21.)

**Standard of Review**

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). "Yet, while the principles of 'clearly established law' are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007). The inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the

petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir.

1989). Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

## Discussion

Petitioner raises two grounds for habeas relief: (1) that the prosecutor violated the plea agreement by not making a sentencing recommendation; and (2) the sentencing guidelines were miscalculated, resulting in a violation of due process. In addition, as explanation for his failure to object at sentencing to the alleged deficiencies, Petitioner argues that his attorney rendered ineffective assistance of counsel.

Before the court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan*, 513 U.S. at 365-66; *Silverburg v. Evitts*, 993 F.2d 124, 126 (6th Cir. 1993); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. The district court can and must raise the exhaustion issue *sua sponte*, when it clearly appears that habeas claims have not been presented to the state courts. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen*, 424 F.2d at 138-39.

Petitioner attempted to raise his first habeas ground in his motion to file a supplemental brief on appeal, which was denied by the Michigan Court of Appeals. He did not raise the issue in his application for leave to appeal to the Michigan Supreme Court. The issue therefore clearly is unexhausted.

Petitioner's second habeas ground was raised for the first time in the Michigan Supreme Court. Presentation of an issue for the first time on discretionary review to the state supreme court does not fulfill the requirement of "fair presentation." *Castille v. Peoples*, 489 U.S. 346, 351 (1989). Applying *Castille*, the Sixth Circuit holds that a habeas petitioner does not comply with the exhaustion requirement when he fails to raise a claim in the state court of appeals, but raises it for the first time on discretionary appeal to the state's highest court. *See Dunbar v. Pitcher*, No. 98-2068, 2000 WL 179026, at *1 (6th Cir. Feb. 9, 2000); *Miller v. Parker*, No. 99-5007, 1999 WL 1282436, at *2 (Dec. 27, 1999); *Troutman v. Turner*, No. 95-3597, 1995 WL 728182, at *2 (6th Cir. Dec. 7, 1995); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990); *accord Parkhurst v. Shillinger*, 128 F.3d 1366, 1368-70 (10th Cir. 1997); *Ellman v. Davis*, 42 F.3d 144, 148 (2d Cir. 1994); *Cruz v. Warden of Dwight Corr. Ctr.*, 907 F.2d 665, 669 (7th Cir. 1990); *but see Ashbaugh v. Gundy*, 244, F. App'x 715, 717 (6th Cir. 2007) (declining to reach question of whether a claim raised for the first time in an application for leave to appeal to the Michigan Supreme Court is exhausted). Unless the state supreme court actually grants leave to appeal and reviews the issue, it remains unexhausted in the state courts. Petitioner's application for leave to appeal was denied, and, thus, the issue was not reviewed.

An applicant has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c). Petitioner has

- 9 -

at least one available procedure by which to raise the unexhausted issues he has presented in this application. He may file a motion for relief from judgment under MICH. CT. R. 6.500 *et. seq*. Under Michigan law, one such motion may be filed after August 1, 1995. MICH. CT. R. 6.502(G)(1). Petitioner has not yet filed his one allotted motion. Therefore, the Court concludes that he has at least one available state remedy.

However, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). Because both of Petitioner's claims lack merit, I will review the unexhausted petition.

    I.    <u>Violation of Plea Agreement</u>

In his first ground for habeas relief, Petitioner contends that the prosecution failed comply with its obligations under the plea agreement by failing to make a sentencing recommendation, despite Petitioner's cooperation with Detective Bylsma.

The Sixth Circuit has recognized that a state prosecutor's breach of a plea bargain is a violation of the federal constitution cognizable on habeas review. *Dixon v. Alexander*, 741 F.2d 121, 123 (6th Cir. 1984). The government may not openly breach a plea agreement. *See Mabry v. Johnson*, 467 U.S. 504, 509 (1984) ("[W]hen the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction cannot stand[.]"). As the Supreme Court stated in *Mabry*, "'when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.'" *Id.* at 509 (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)).

Plea agreements are contractual in nature. In interpreting and enforcing them, courts use traditional principles of contract law. *See Smith v. Stegall*, 385 F.3d 993, 999 (6th Cir. 2004) (citing *United States v. Robison*, 924 F.2d 612, 613 (6th Cir. 1991)).

> One fundamental principle of contract interpretation is that "primary importance should be placed upon the words of the contract. Unless expressed in some way in the writing, the actual intent of the parties is ineffective, except when it can be made the basis for reformation of the writing." 11 Williston on Contracts § 31:4 (4th ed. 2000). Consistent with the principle articulated by Williston, this court has held that the state will be held to the literal terms of the plea agreement.

*Id.* (citing *United States v. Mandell*, 905 F.2d 970, 973 (6th Cir. 1990)). The content of a plea agreement and what the parties agreed to is a question of fact. *United States v. Lukse*, 286 F.3d 906, 909 (6th Cir. 2002).

Petitioner fails to demonstrate a breach of the plea agreement. Petitioner repeatedly was informed that his cooperation was expected in exchange for the dismissal of the supplement charging Petitioner as a fourth habitual offender – an agreement that substantially reduced Petitioner's sentence. That agreement was fulfilled; the habitual offender supplement was dismissed. Because Petitioner was required to cooperate in order to obtain the dismissal of the supplement, his mere cooperation was insufficient to warrant a sentence recommendation. Instead, the literal terms of the agreement provided that any sentence recommendation was entirely contingent on a determination by Detective Bylsma that "the information provided was *very* significant." (Plea Tr., 19 (emphasis added).) Here, Petitioner does no more than argue that he cooperated with Bylsma. He fails entirely to allege or demonstrate that the information he provided was sufficiently significant as to suggest that Bylsma or the prosecutor acted on unconstitutional considerations in refusing to make a sentencing recommendation. *Cf. United States v. Benjamin*, 138 F.3d 1069, 1073 (6th Cir.

1998) (where government retains sole discretion to determine substantial assistance for purposes of a motion under federal sentencing guidelines, a "district court may only review the government's refusal to make the motion to determine whether the refusal was based on unconstitutional considerations, such as the defendant's race") (citing *Wade v. United States*, 504 U.S. 181, 185-86 (1992)). Petitioner therefore fails to demonstrate that the prosecutor breached the plea agreement.

Because Petitioner fails to demonstrate a breach of the agreement, his attorney's failure to object to absence of a sentencing recommendation does not constitute ineffective assistance of counsel. *See Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004) (failure to make a meritless motion is not ineffective assistance); *A.M. v. Butler*, 360 F.3d 787, 795 (7th Cir. 2004); *James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir.1990); *United States v. Wright*, 573 F.2d 681, 684 (1st Cir. 1978).

II.     Guidelines Calculations

Claims concerning the improper scoring of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief); *Cheatham v. Hosey*, No. 93-1319, 1993 WL 478854, at *2 (6th Cir. Nov. 19, 1993) (departure from sentencing guidelines is an issue of state law, and, thus, not cognizable in federal habeas review); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law). There is no constitutional right to individualized sentencing. *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Moreover, a criminal defendant has "no federal

constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004); *accord Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987).

Although state law errors generally are not reviewable in a federal habeas proceeding, an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'" *Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. Feb. 15, 2005) (citing *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003)). *See also Doyle*, 347 F. Supp. 2d at 485 (a habeas court "will not set aside, on allegations of unfairness or an abuse of discretion, terms of a sentence that is within state statutory limits unless the sentence is so disproportionate to the crime as to be completely arbitrary and shocking.") (citation omitted). A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Koras,* 123 F. App'x at 213 (quoting *Roberts v. United States,* 445 U.S. 552, 556 (1980)); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972)*; Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984). *Koras,* 123 F. App'x at 213 (quoting *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988)). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

Petitioner's sentence clearly is not so disproportionate to the crime as to be arbitrary or shocking. *Doyle*, 347 F. Supp. 2d at 485. Further, Petitioner does not even argue that the facts found by the court at sentencing were either materially false or based on false information. *Tucker*, 404 U.S. at 447. Instead, Petitioner argues only that certain of the court's sentencing guidelines determinations were erroneous. Such claims clearly fall far short of the sort of egregious circumstances implicating due process.

Moreover, counsel's failure to object to the sentence scoring may not be considered to be ineffective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

"When deciding ineffective-assistance claims, courts need not address both components of the inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004) (quoting *Strickland*, 466 U.S. at 697). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.

Here, the Court need not address whether counsel's performance fell outside the range of reasonable professional assistance because Petitioner has failed to show that the lack of objection was prejudicial to the ultimate sentence imposed. As previously discussed, appellate counsel moved in the trial court for resentencing, raising the alleged scoring errors. (Resentencing Tr., 3-5.) However, it appears from the hearing on the resentencing motion, that any error in guidelines scoring would not have reduced the range. The trial court acknowledged that at least one error in scoring appeared to have occurred. But in reviewing all of the record information, the court indicated that other errors appeared to have worked to Petitioner's advantage. (*Id.*) The court advised Petitioner that, if his motion for resentencing were granted, a new presentence investigation report would be prepared that would correct all errors, including those that had previously operated in Petitioner's favor. As a result, the court warned, prevailing on the motion for retentencing had the potential to appreciably increase Petitioner's sentencing guidelines recommendation to a range for which the sentence he previously received would be too low. (*Id.* at 4.) In the face of that risk, the court asked if Petitioner intended to pursue his motion. Upon consideration, Petitioner, through counsel, elected to withdraw his motion rather than risk a new calculation of the sentencing guidelines that could result in an even higher sentence recommendation. (*Id.* at 5; *see also* 10/24/06 Cir. Ct. Ord, docket #21.)

Given the discussion on the record at resentencing, the evidence does not support a finding that erroneous sentence scoring error actually prejudiced Petitioner by increasing the sentence he received. *See Christian v. Trombley*, No. 2:07-cv-10894, 2008 WL 5111893, at *5 (E.D. Mich. Dec. 2, 2008) (rejecting ineffective assistance of counsel claim for failure to object to guideline score because the petitioner did not allege facts that demonstrated that a change in the scoring of an offense variable would have affected his sentence). In fact, Petitioner has not attempted to dispute the trial court's conclusion that new sentence scoring was likely to result in a greater sentence. Moreover, Petitioner expressly waived in the trial court the very issue he now presents in his habeas petition. For all these reasons, Petitioner's ineffective assistance of counsel claim is without merit, as Petitioner has not demonstrated that counsel's failure to object to any guidelines scoring error had a prejudicial impact on his sentence.

### Recommended Disposition

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.

Date:  April 6, 2009                                                      /s/ Ellen S. Carmody
                                                                                       ELLEN S. CARMODY
                                                                                       United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).